**Certiorari Denied, August 29, 2011, No. 33,142**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-095**

**Filing Date:  July 5, 2011**

**Docket No. 29,894**

**STATE OF NEW MEXICO,**

>       **Plaintiff-Appellee,**

**v.**

**RANDY SORRELHORSE,**

>       **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

McGarry Law Office
Kathleen McGarry
Glorieta, NM

for Appellant

## OPINION

**WECHSLER, Judge.**

**{1}**    Our opinion filed March 22, 2011, is hereby withdrawn, and this opinion is filed in its stead.  We deny the State's motion for rehearing.

**{2}**    Defendant Randy Sorrelhorse appeals his convictions for breaking and entering and

1

criminal damage to property. Defendant argues that (1) the evidence was insufficient to support his conviction for breaking and entering, and (2) his conviction for criminal damage to property violates his right to be free from double jeopardy. For the reasons that follow, we affirm Defendant's conviction for breaking and entering, and we vacate his conviction for criminal damage to property.

**BACKGROUND**

{3}     At trial, Jimmy Arellano testified that he and his friend Christine Southworth were at his apartment when Defendant knocked on the door and asked for cigarettes. Arellano told Defendant to leave and closed the door. Defendant returned several minutes later, and when Arellano opened the door, Defendant told Arellano that he would cut him with a knife. Arellano then tried to close the door, and Defendant began kicking and banging on it, while Arellano and Southworth both tried to hold the door closed.

{4}     Arellano testified that during this struggle, Defendant was able to get into his apartment a little way. He testified that Defendant was able to push him back into the apartment about a foot. Southworth testified that, while Arellano was trying to keep Defendant out, she called 911, and Defendant began to walk away. The 911 operator asked which direction Defendant was headed, and when Arellano opened the door to see, Defendant returned and began kicking the door again. Southworth also testified that during Defendant's struggle with Arellano over the door, Defendant was able to get his foot into the apartment and that he was stepping into the apartment. Based on these events, Defendant was convicted of breaking and entering, contrary to NMSA 1978, Section 30-14-8(A) (1981), and criminal damage to property, contrary to NMSA 1978, Section 30-15-1 (1963). Defendant timely appeals.

**SUFFICIENCY OF THE EVIDENCE**

{5}     Defendant first argues that his conviction for breaking and entering was not supported by sufficient evidence. "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "The reviewing court does not weigh the evidence or substitute its judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789, *abrogated on other grounds as recognized by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683.

{6}     In order to convict Defendant of breaking and entering, the State was required to present evidence beyond a reasonable doubt that (1) Defendant entered a dwelling house without permission, and (2) entry was obtained by breaking a door. *See* UJI 14-1410 NMRA; *see also* § 30-14-8(A). Defendant argues that the evidence was insufficient to establish that he entered the apartment. Defendant argues that, since Arellano and

2

Southworth testified that Arrellano was able to prevent Defendant from coming into the apartment, the essential element of entry cannot be established.

**{7}** Our case law interpreting the term "entry" in the criminal code requires only the slightest penetration of an interior space. *See State v. Reynolds*, 111 N.M. 263, 270, 804 P.2d 1082, 1089 (Ct. App. 1990) (noting that any penetration of the interior space, however slight, is sufficient to constitute "entry" within the meaning of the burglary statute); *State v. Tixier*, 89 N.M. 297, 298-99, 551 P.2d 987, 988-89 (Ct. App. 1976) (holding that evidence that an unidentified instrument penetrated one-half inch inside a building is enough to effectuate an entry under the burglary statute); *see also State v. Muqqddin*, 2010-NMCA-069, ¶¶ 11-13, 148 N.M. 845, 242 P.3d 412 (holding that the defendant's act of penetrating the gas tank of a van with a nail constituted an entry for purposes of the burglary statute).

**{8}** In this case, there was evidence that Defendant's foot entered the apartment. Additionally, the jury could reasonably infer that Defendant entered the apartment based on the testimony that he pushed the people who were inside the apartment back further into the apartment. We also reject Defendant's assertion that Arrellano's testimony that he was able to stop Defendant from coming into the apartment necessarily means that no part of Defendant's body ever penetrated the interior space of the apartment. Defendant's conviction for breaking and entering was supported by sufficient evidence.

**DOUBLE JEOPARDY**

**{9}** We now address Defendant's argument that he was improperly convicted for both breaking and entering and criminal damage to property in violation of his right to be free from double jeopardy. Defendant raises a "double-description" double jeopardy claim. *See State v. Dombos*, 2008-NMCA-035, ¶ 10, 143 N.M. 668, 180 P.3d 675 (stating that double-description cases are those in which a single act results in multiple charges under different criminal statutes). We review double jeopardy claims de novo. *See State v. Bernal*, 2006-NMSC-050, ¶ 6, 140 N.M. 644, 146 P.3d 289.

**{10}** In addressing double-description claims, we employ the two-part test set forth by our Supreme Court in *Swafford v. State*, 112 N.M. 3, 13-15, 810 P.2d 1223, 1233-35 (1991). *See State v. Vallejos,* 2000-NMCA-075, ¶ 6, 129 N.M. 424, 9 P.3d 668. "First, we examine whether the conduct was unitary, meaning whether the same criminal conduct is the basis for both charges." *Bernal*, 2006-NMSC-050, ¶ 9. In determining whether conduct was unitary, we "consider whether the defendant's acts are separated by sufficient indicia of distinctness." *State v. Lopez*, 2008-NMCA-111, ¶ 9, 144 N.M. 705, 191 P.3d 563 (internal quotation marks and citation omitted). "[W]e consider such factors as whether the acts were close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and a defendant's goals for and mental state during each act." *State v. Ford*, 2007-NMCA-052, ¶ 12, 141 N.M. 512, 157 P.3d 77.

3

**{11}** Applying these factors to the facts of this case, we conclude that Defendant's conduct was unitary. There was little separation in time and no separation in space between Defendant's initial act of trying to force open the door and his returning moments later to beat on the door again. Nor was there any significant change in the nature or objective of Defendant's conduct. The conduct underlying both convictions was the same, and Defendant's intent was to open the door to the apartment by physical force. *See State v. Demongey*, 2008-NMCA-066, ¶ 15, 144 N.M. 333, 187 P.3d 679 (holding that firing three shots separated by minutes and distance traveled was unitary conduct, where the shots were fired during one high-speed chase in an attempt to escape from a pursuing officer); *State v. Mares*, 112 N.M. 193, 200, 812 P.2d 1341, 1348 (Ct. App. 1991) (holding that the defendant could be found guilty of only one count of aggravated battery when he was charged with four counts involving pulling hair, beating, choking, and slapping the victim at various different locations "over one violent rampage with little time between offensive contacts").

**{12}** The State argues that Defendant's act of walking away from the apartment and Arrellano's sticking his head out of the apartment door constituted intervening events that rendered Defendant's conduct non-unitary. However, we disagree that Defendant's act of momentarily walking away from the apartment door before returning to continue to bang on it is sufficient to render the conduct non-unitary. *Cf. State v. Cooper*, 1997-NMSC-058, ¶ 61, 124 N.M. 277, 949 P.2d 660 (finding non-unitary conduct when a struggle "was an intervening event between the initial battery and the acts that caused the death").

**{13}** "If the defendant's conduct is unitary, we next determine whether the Legislature intended to create separately punishable offenses for the same conduct." *Demongey*, 2008-NMCA-066, ¶ 18. Absent a clear expression of legislative intent, we apply the test stated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *See State v. Armendariz*, 2006-NMSC-036, ¶ 21, 140 N.M. 182, 141 P.3d 526. Neither party argues that there is any indication of legislative intent to impose multiple punishments, nor do we find any. We therefore apply the *Blockburger* test.

**{14}** "In applying the *Blockburger* test, this Court compares the elements of each crime with the elements of the other to determine whether the Legislature intended separate punishments under each statute." *State v. Lee*, 2009-NMCA-075, ¶ 9, 146 N.M. 605, 213 P.3d 509, *cert. denied*, 2009-NMCERT-006, 146 N.M. 733, 215 P.3d 42. "[I]f we conclude that each statute requires proof of an element that the other does not, then a presumption arises that our [L]egislature intended for the conduct to result in separately punishable offenses." *State v. Caldwell*, 2008-NMCA-049, ¶ 11, 143 N.M. 792, 182 P.3d 775. This presumption can be overcome by other indicia of legislative intent. *See id.*

**{15}** Breaking and entering can be committed a number of ways. Section 30-14-8(A) provides, in relevant part, that "[b]reaking and entering consists of the unauthorized entry of any . . . dwelling . . . , where entry is obtained by fraud or deception, or by the breaking or dismantling of any part of the . . . dwelling . . . , or by the breaking or dismantling of any device used to secure the . . . dwelling[.]" Through Section 30-14-8(A), the Legislature has

4

provided alternative methods of committing the crime of breaking and entering a dwelling: by unlawfully entering a dwelling by fraud and deception or by unlawfully entering a dwelling by breaking or dismantling any part of the dwelling or any device that secures the dwelling.

**{16}** When conducting a *Blockburger* analysis of a crime that may be charged in alternative ways, we look to the "legal theory" of the crime charged. *State v. Franco*, 2005-NMSC-013, ¶ 14, 137 N.M. 447, 112 P.3d 1104. We do so by focusing on "the elements of the statute as charged to the jury" and disregarding "the inapplicable statutory elements." *Lee*, 2009-NMCA-075, ¶ 11 (alteration, internal quotation marks and citation omitted). When it is clear upon which statutory alternative the defendant was convicted, we apply the *Blockburger* test by comparing the elements of the crime as charged with the elements of the other crime at issue. *See Franco*, 2005-NMSC-013, ¶ 15 (observing that a strict application of the *Blockburger* test may not be used if there are "multiple alternatives of a compound statute and it is unclear which alternative the jury relied on"). In comparing the elements under the *Blockburger* test, we do not examine the facts in detail. *Franco*, 2005-NMSC-013, ¶ 14.

**{17}** The jury was instructed that to convict Defendant of breaking and entering, it had to find beyond a reasonable doubt that (1) Defendant entered a dwelling house without permission, and (2) entry was obtained by the breaking of a door. The elements of criminal damage to property are "intentionally damaging any real or personal property of another without the consent of the owner of the property." Section 30-15-1; *see also* UJI 14-1501 NMRA (requiring proof that the defendant intentionally damaged the property of another and that the defendant did not have the owner's permission to damage the property).

**{18}** When we compare the two crimes, we conclude that breaking and entering requires proof of an entry, which is not an element of criminal damage to property, and criminal damage to property does not require proof of an element that is not contained in breaking and entering. The State argues otherwise, contending that criminal damage to property contains the essential element of intent to damage property, which it contends is not an element of breaking and entering. The State bases its argument on the common law meaning of the term "breaking," which it asserts this Court must conclude the Legislature intended when it used the term in Section 30-14-8(A). To be sure, the common law is the backdrop for the Legislature's enactments, and courts therefore can rely on the common law to construe unclear or ambiguous statutes. *Sims v. Sims*, 1996-NMSC-078, ¶ 24, 122 N.M. 618, 930 P.2d 153. The State asserts, and we agree, that courts should construe a statute based on its common law meaning unless the Legislature intended otherwise. *Id*. ¶ 23. We address the State's argument as raising an issue of statutory construction concerning legislative intent, which we consider de novo. *Ortiz v. Overland Express*, 2010-NMSC-021, ¶ 18, 148 N.M. 405, 237 P.3d 707. In our analysis, "we seek to give effect to legislative intent by looking to the language used and considering the statute's history and background." *Id*. ¶ 19 (alteration, internal quotation marks, and citation omitted).

5

**{19}** At common law, the focus of the crime of burglary was to protect the security of the home and those living within it. Minturn T. Wright III, Note, *Statutory Burglary—The Magic of Four Walls and a Roof*, 100 U. Pa. L. Rev. 411, 427 (1951). Burglary consisted of breaking and entering a dwelling of another in the night time with the intent to commit a felony. *Id.* at 411. Although the breaking element required some aspect of force in order to distinguish it from the element of entering, actions such as opening a closed window or crawling down a chimney were considered breaking, and damage to property was not necessary. *Id.* at 412. As the crime of common law burglary evolved, an actual breaking was not required for common law burglary; a constructive breaking was sufficient. *Id.*; *State v. Ortiz*, 92 N.M. 166, 168, 584 P.2d 1306, 1308 (Ct. App. 1978). In construing the New Mexico burglary statute, this Court held that entry by fraud, deceit, or pretense was sufficient to constitute the "unauthorized entry" requirement, which had been adopted by the New Mexico Legislature instead of the common law requirement of "breaking." *See id.* at 168, 584 P.2d at 1308 (observing that "New Mexico no longer defines burglary in terms of a 'breaking'").

**{20}** To adopt the State's position, we must construe Section 30-14-8(A) to adopt the meaning of the term "breaking" as used in common law burglary. As argued by the State, the term would then embrace the common law concepts of the "breaking of the planes" or "breaking the close." *See United States v. Eichman*, 756 F. Supp. 143, 148 (S.D.N.Y. 1991); *People v. Frey*, 467 N.E.2d 302, 304 (Ill. App. Ct. 1984). However, this case does not involve a burglary statute, but rather involves the crime of breaking and entering. Section 30-14-8(A) specifically prohibits "the breaking or dismantling of any part" of a dwelling. It does not mention the concepts of common law burglary that the State contends are controlling. Nor are we concerned with a constructive breaking under the charges against Defendant. Rather, Section 30-14-8(A), by addressing the "breaking" of "any part" or "any device used to secure," contemplates a physical breaking contrary to common law burglary. The Legislature departed from the common law burglary concepts in enacting Section 30-14-8(A).

**{21}** Thus, looking at the elements of breaking and entering and criminal damage to property, the offense of criminal damage to property does not require proof of a separate element, and it was subsumed within breaking and entering. *See Lee*, 2009-NMCA-075, ¶ 14 (stating that when one offense is subsumed within another, the inquiry is over and the statutes are the same for double jeopardy purposes). As a result, Defendant's right to be free from double jeopardy was violated by his convictions for breaking and entering and criminal damage to property.

**CONCLUSION**

**{22}** We affirm Defendant's conviction for breaking and entering and vacate his conviction for criminal damage to property. *See Lee*, 2009-NMCA-075, ¶ 16 (stating that when double jeopardy exists, the offense carrying the lesser punishment is to be vacated).

6

**{23}     IT IS SO ORDERED**.

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**

_____

**LINDA M. VANZI, Judge**

**Topic Index for _State v. Sorrelhorse_, No. 29,894**

| | |
|---|---|
| **CL** | **CRIMINAL LAW** |
| CL-BE | Breaking and Entering |
| CL-CD | Criminal Damage |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DJ | Double Jeopardy |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-DJ | Double Jeopardy |
| CA-SE | Substantial or Sufficient Evidence |
| CA-VJ | Vacating Judgment |